Index No.  22-CV-3074 (LJL)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RURADAN CORPORATION,

Plaintiff,

- against -

CITY OF NEW YORK, JIN CHOI, MATTHEW AHN,
RAYMOND KIM, L&K 48 VENTURE, INC., and JLEE
19 CORP.,

Defendants.

**DEFENDANT CITY OF NEW YORK'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS THE AMENDED
COMPLAINT**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Scali Riggs*
*Tel:  (212) 356-2197*
*Matter No. 2022-021648*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..............................................................................................II

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF RELEVANT FACTS .......................................................................... 3

      A.   New York State's Response to the COVID-19 Pandemic .................................. 3

      B.   The Guaranty Law ............................................................................................ 4

      C.   The Instant Action............................................................................................ 5

ARGUMENT ..................................................................................................................... 6

STANDARD OF REVIEW ............................................................................................... 6

POINT I

      PLAINTIFF FAILS TO STATE A CAUSE OF ACTION .......................................... 7

      A.   Plaintiff Fails to State a Claim Under the Takings Clause. .................................. 7

      B.   Plaintiff Fails to State a Claim Under the Due Process Clause.......................................................................................................... 10

      C.   Plaintiff Fails to State a Claim Under the Contracts Clause............................... 12

      D.   The Guaranty Law is Consistent With New York State Law. ............................................................................................................. 14

CONCLUSION................................................................................................................. 16

## TABLE OF AUTHORITIES

**Cases**                                                                 **Pages**

1256 Hertel Ave. Associates, LLC v. Calloway,
    761 F.3d 252 (2d Cir. 2014)...................................................................................7

Allied Structural Steel Co. v. Spannaus,
    438 U.S. 234 (1978)................................................................................ 13-14

Am. Econ. Ins. Co. v. State,
    30 N.Y.3d 136 (2017) ......................................................................... 7, 15-16

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)...........................................................................6, 9, 13

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007).....................................................................................6

Bi-Metallic Inv. Co. v. State Bd. of Equalization,
    239 U.S. 441 (1915).....................................................................................11

Buffalo Teachers Fed. v. Tobe,
    464 F.3d 362 (2d Cir. 2006).....................................................................7, 8, 9

Coakley v. Jaffe,
    49 F. Supp. 2d 615 (S.D.N.Y. 1999)..........................................................15

Davidson v. Flynn,
    32 F.3d 27 (2d Cir. 1994)............................................................................6

DJL Rest. Corp. v. City of New York,
    96 N.Y.2d 91 (2001) ...................................................................................15

Fed. Home Loan Mtge. Corp. v. N.Y.S. Div. of Hous. & Cmty. Renewal,
    83 F.3d 45 (2d Cir. 1996)............................................................................8

Gen. Motors Corp. v. Romein,
    503 U.S. 181 (1992)....................................................................................12

Gizzo v. Ben-Habib,
    44 F. Supp. 3d 374 (S.D.N.Y. 2014)..........................................................10

Grandon v. Merrill Lynch & Co.,
    147 F.3d 184 (2d Cir. 1988)........................................................................6

Greystone Hotel Co. v. City of NY,
    13 F. Supp.2d 524 (S.D.N.Y. 1998)..........................................................11

ii

**Cases**                                                                                       **Pages**

Guan N. v. NYC Dep't of Educ.,
    2013 U.S. Dist. LEXIS 2204 (S.D.N.Y. Jan. 7, 2013)...........................................................15

Harmon v. Markus,
    412 F. App'x 420 (2d Cir. 2011) ...............................................................................7, 12

Heidel v. Hochul,
    2021 U.S. Dist. LEXIS 203572 (S.D.N.Y. Oct. 21, 2021) ........................................ 7, 9-10, 15

J.S. v. T'Kach,
    714 F.3d 99 (2d Cir. 2013)......................................................................................10

Kabrovski v. City of Rochester,
    149 F. Supp. 3d 413 (W.D.N.Y. 2015) ......................................................................9

Keystone Bituminous Coal Ass'n v. DeBenedictis,
    480 U.S. 470 (1987) ..............................................................................................9

Kolari v. N.Y. Presbyterian Hosp.,
    455 F.3d 118 (2d Cir. 2006)....................................................................................14

Logan v. Zimmerman Brush Co.,
    455 U.S. 422 (1982)..........................................................................................10, 11

Madonna v. United States,
    878 F.2d 62 (2d Cir. 1989)......................................................................................6

Melendez v. City of NY,
    16 F.4th 992 (2d Cir. 2021) ............................................................................12, 13, 14, 16

Mullane v. Central Hanover Bank & Trust Co.,
    339 U.S. 306 (1950)..............................................................................................10

N.Y. Pet Welfare Ass'n v. City of N.Y.,
    850 F.3d 79 (2d Cir. 2017),
    cert. denied (NY Pet Welfare Assn. v. City of NY, ___U.S.___,
    138 S Ct 131 (2017)..............................................................................................15

Palazzolo v. Rhode Island,
    533 U.S. 606 (2001)..............................................................................................7

Penn. Cent. Transp. Co. v. City of N.Y.,
    438 U.S. 104 (1978)............................................................................................7, 8, 9

**Cases**                                                          **Pages**

Rogin v. Bensalem Twp.,
     616 F.2d 680 (3d Cir. 1980)
     cert. denied, Mark-Garner Assoc., Inc. v. Bensalem Twp.,
     450 U.S. 1029 (1981)............................................................... 11-12

Singer v. City of N.Y.,
     417 F. Supp. 3d 297 (S.D.N.Y. 2019)...........................................9

Sveen v. Melin,
     ___U.S.___, 138 S Ct 1815 (2018)...............................................12

Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.,
     2016 U.S. Dist LEXIS 44265
     (S.D.N.Y. Mar. 31, 2016, No. 14-CV-7349 (AJN)) .............................10

Yee v. City of Escondido,
     503 U.S. 519 (1992)..................................................................8

**Statutes**

28 U.S.C. § 1367(c) .......................................................................14

Fed. R. Civ. P. 12(b)(6)...............................................................1, 3, 6

MHRL §§ 10(1)(ii)(a)(11)-(12) ..........................................................15

MHRL § 50(1) ............................................................................15

N.Y. Admin. Code § 22-1005.......................................................4, 9, 11

N.Y. Admin. Code § 22-1005(1) ..........................................................5

N.Y. Admin. Code § 22-1005(2) ..........................................................5

N.Y. Executive Law § 29-a..................................................................3

**Other Authorities**

N.Y. Const., art. IX, § 1 ...................................................................14

N.Y. Const., art. IX, § 2(c)(ii)(10) .......................................................14

N.Y. Const., art. IX, § 3(c)................................................................15

NYC Local Law No. 55-2020 ('the Guaranty Law') ............................... *passim*

U.S. Const., art. I, § 10, cl. 1.............................................................12

iv

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

   RURADAN CORPORATION,

                                   Plaintiff,    22 CV 03074 (LJL)

               v.

CITY OF NEW YORK, JIN CHOI, MATTHEW AHN,
RAYMOND KIM, L&K 48 VENTURE, INC., and JLEE
19 CORP.,

                                   Defendants.

-------------------------------------------------------------------x

## DEFENDANT CITY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

Defendant City of New York ("City"), by its attorney Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, respectfully submits this memorandum of law in support of its motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

As part of its effort to respond to the economic devastation brought on by the COVID-19 pandemic, the City Council passed Local Law No. 55-2020 ("Guaranty Law") to protect guarantors, who are typically small business owners, and who were subject to certain pandemic-related operational restrictions. The Guaranty Law operates as a defense to enforcement of personal guaranties in commercial leases when certain criteria are met. To invoke this defense, the guarantor must be a natural person or persons, the tenant must have been forced to cease operating its business due to certain pandemic era shutdown orders, and the tenant's default in payment of rent (or other event which would cause the guarantor to become liable under the

contract) must have occurred between March 7, 2020 and June 30, 2021. The Guaranty Law aims to mitigate the adverse economic effects of the COVID-19 crisis. Personal liability provisions in commercial leases may hold a guarantor personally responsible if the business defaults by threatening the seizure of personal assets or property. If these guarantors suffered grave personal economic losses, like the loss of a home, the economic and social damage to the City would have been greatly exacerbated. Significantly, without the protection of the Guaranty Law, guarantors might have exercised options to vacate commercial premises, in an effort to limit personal liability. Had small businesses shut their doors, and both employees and business owners lost their livelihood, the City's small business economy could have collapsed. The Guaranty Law was essential to ensuring a strong, equitable economic recovery from the pandemic.

Plaintiff, the landlord of a mixed-use residential and commercial building, asserts a breach of contract claim against its former tenant and those who provided a guaranty for that tenant's lease; plaintiff also asserts a claim against the Defendant the City of New York ("City Defendant" or "City") that challenges the Guaranty Law on various constitutional grounds, and as "inconsistent" with the New York State Constitution and the Municipal Home Rule Law.[1] Specifically, Plaintiff alleges that the Guaranty Law violates the Takings Clause, Due Process Clause, and the Contracts Clause.

The Amended Complaint fails to state a cause of action against the City. Plaintiff's Takings claim must be dismissed because Plaintiff fails to plausibly allege any facts establishing that the Guaranty Law interfered with Plaintiff's distinct investment-backed expectations. Plaintiff similarly fails to state a due process claim in that Plaintiff has not pled that the Guaranty Law has

---

[1] Plaintiff asserts one cause of action for breach of contract against the remaining defendants. Am. Compl. ¶¶ 85-91

deprived it of a valid property interest or that any such deprivation was without adequate process. Likewise, Plaintiff has not plausibly pled that the Guaranty Law runs afoul of the Contracts Clause because Plaintiff has not set forth sufficient factual allegations to establish that the Guaranty Law substantially impaired Plaintiff's lease or guaranty. Although Plaintiff vaguely restates the elements of each of these claims, Plaintiff's thread-bare allegations of harm are not sufficient to survive a 12(b)(6) motion. Finally, a simple reading of the New York State Constitution and Municipal Home Rule Law dispels any notion that there is a direct conflict with the Guaranty Law. The Amended Complaint should be dismissed as to the City.

## STATEMENT OF RELEVANT FACTS

**A.      New York State's Response to the COVID-19 Pandemic**

To address the public health emergency caused by COVID-19, New York State took a number of legislative and executive measures that are relevant to this action. The first of these was the State's March 3, 2020 enactment of Chapter 23 of the Laws of New York of 2020, which, *inter alia*, amended N.Y. Executive Law § 29-a to enable the Governor to issue directives necessary to cope with a disaster emergency and to expand the Governor's existing authority to temporarily suspend laws, rules or orders during such emergencies. See Ex. B at 2-3.[2] Following such enactment, the Governor, by Executive Order ("EO") No. 202 dated March 7, 2020, declared a state disaster emergency until September 7, 2020.[3] See Ex. C.

---

[2] The exhibits referenced herein are annexed to the "Declaration of Scali Riggs in Support of Defendant City of New York's Motion to Dismiss the Amended Complaint" dated August 24, 2022 ("Riggs Decl.").

[3] EO No. 202 states that the Governor "authorize[d] all necessary State agencies to take appropriate action to ***assist*** local governments and individuals in containing, preparing for, responding to and recovering from this state disaster emergency, to protect state and local property, and to provide such other assistance as is necessary to protect public health, welfare, and safety." Ex. C (emphasis added).

To reduce the spread of COVID-19, the Governor issued a number of directives requiring the closure of "non-essential" businesses, as well as the total or partial limitation of certain business operations. On March 16, 2020, the Governor ordered the closure of gyms, fitness centers and movie theaters, and the total cessation of on-premises service at restaurants and bars (except for service for off-premise consumption). Ex. D (EO No. 202.3). In addition to these restrictions, a myriad of other businesses were forced to close. Ex. F (EO No. 202.7) (ordering the closure of all barbershops, hair salons, tattoo or piercing parlors and related personal care services). By March 22, 2020 at 8:00 p.m., the Governor had required all non-essential businesses or entities[4] to reduce the in-person workforce at any work locations by 100%. Ex. G (EO No. 202.8). These shutdowns had devastating impacts on businesses and individuals.

## B.    The Guaranty Law

The Guaranty Law added Admin. Code § 22-1005, entitled "Personal liability provisions in commercial leases." The Guaranty Law provides that, "[a] provision in a commercial lease or other rental agreement involving real property located within the city that provides for one or more natural persons who are not the tenant . . . to become, upon the occurrence of a default or other event, wholly or partially personally liable for payment of rent . . . owed by the tenant under such agreement, shall not be enforceable against such natural persons if" two conditions are satisfied.  First, the tenant must meet one of the following criteria: (a) the tenant "was required to cease serving patrons food or beverage for on-premises consumption or to cease operation under [EO No.] 202.3"; (b) the tenant "was a non-essential retail establishment subject to in-person

---

[4] This directive did not apply to essential businesses or entities, which include health care operations, infrastructure, manufacturing including food processing and pharmaceuticals, retail including grocery stores and pharmacies, trash collection, mail, banks and related financial institutions, construction, and services needed to ensure the continuing operation of government agencies and provide for the health, safety and welfare of the public. Ex. E (EO No. 202.6).

limitations under guidance issued by the New York state department of economic development pursuant to [EO No.] 202.6"; or (c) the tenant "was required to close to members of the public under [EO No.] 202.7." Id. § 22-1005(1). Second, "[t]he default or other event" causing [the guarantor] to become wholly or partially personally liable for such obligation occurred between March 7, 2020 and June 30, 2021, inclusive." Id. § 22-1005(2).

## C.    The Instant Action

Plaintiff brings the instant action to challenge the Guaranty Law on various constitutional grounds, and as inconsistent with state law. See generally, Am. Compl. Plaintiff alleges that it entered into a lease and guaranty with Defendants JIN CHOI, MATTHEW AHN, RAYMOND KIM, L&K 48 VENTURE, INC., and JLEE 19 CORP., ("Toasties Defendants"), and that the Toasties Defendants allegedly defaulted on said lease and guaranty. Am. Compl. at ¶¶ 11-22. Plaintiff further alleges that it commenced an action in State Court to enforce the lease and guaranty, but that action was voluntarily discontinued after the Toasties Defendants cited to the Guaranty Law in a motion to dismiss. Am. Compl. at ¶¶ 23-29. Plaintiff now claims that the Guaranty Law stands as a barrier to enforcement of Plaintiff's lease and guaranty, in violation of Plaintiff's constitutional rights. See generally Am. Compl. The Amended Complaint, however, says little else. For instance, the Amended Complaint does not allege any facts addressing what the terms of the guaranty are, or whether or not a personal guaranty is a critical part of Plaintiff's commercial lease agreements. Plaintiff has not alleged any facts detailing the commercial tenant's assets, or whether there are practical means for Plaintiff to collect the alleged rent arrears. Plaintiff has not alleged any facts that speak to Plaintiff's expectations under the lease and guaranty. In essence, Plaintiff alleges the existence of a guaranty, and nothing more.

5

# ARGUMENT

## STANDARD OF REVIEW

When deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court is required to accept the facts alleged in the complaint as true and to construe all reasonable inferences in the nonmoving party's favor. See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1988); Davidson v. Flynn, 32 F.3d 27, 29 (2d Cir. 1994) (citing Madonna v. United States, 878 F.2d 62, 65 (2d Cir. 1989)). A complaint must nevertheless "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (citations and quotations omitted).

The Supreme Court in Iqbal set forth a "two-pronged" approach for analyzing a motion to dismiss. Id. First, a court should "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Once the court has stripped away the conclusory allegations, it must determine whether the complaint's "well-pleaded factual allegations… plausibly give rise to an entitlement to relief." Id. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint must be dismissed. Id. at 678-79 ("only a complaint that states a plausible claim for relief survives a motion to dismiss.").

**POINT I**

**PLAINTIFF FAILS TO STATE A CAUSE OF ACTION**

Because Plaintiff has not plausibly pled any constitutional violation, or that the Guaranty Law conflicts with State Law, the Amended Complaint should be dismissed.

**A.     Plaintiff Fails to State a Claim Under the Takings Clause.**

Plaintiff fails to plausibly allege a Takings claim under the federal and state constitutions. The Fifth Amendment's Takings Clause, which is applicable to state and local governments through the Fourteenth Amendment (see Harmon v. Markus, 412 F. App'x 420, 422 (2d Cir. 2011), prohibits the government from taking "private property for public use without just compensation." Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001). The Takings Clause is "designed to bar [the] Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Penn. Cent. Transp. Co. v. City of N.Y., 438 U.S. 104, 123-24 (1978)). "The guarantee against Takings provided by the New York Constitution is generally treated as coextensive to that of the U.S. Constitution." See Heidel v. Hochul, 2021 U.S. Dist. LEXIS 203572, *22 (S.D.N.Y. Oct. 21, 2021) (citing Am. Econ. Ins. Co. v. State, 30 N.Y.3d 136, 155 (2017)). "The Supreme Court has recognized two branches of Takings Clause cases: physical takings and regulatory takings." 1256 Hertel Ave. Associates, LLC v. Calloway, 761 F.3d 252, 263 (2d Cir. 2014). Plaintiff fails to plausibly plead either type of taking.

A physical taking is a direct appropriation or physical invasion of private property by the government. See Palazzolo, 533 U.S. 606, 617 (2001) ("The clearest sort of taking occurs when the government encroaches upon or occupies private land for its own proposed use."); see also Buffalo Teachers Fed. v. Tobe, 464 F.3d 362, 374 (2d Cir. 2006) (A physical taking "occur[s]

7

when the government physically takes possession of an interest in property for some public purpose."). "[T]he Supreme Court has held that government regulation of the rental relationship does not constitute a physical taking." Fed. Home Loan Mtge. Corp. v. N.Y.S. Div. of Hous. & Cmty. Renewal, 83 F.3d 45, 47-48 (2d Cir. 1996) (citing Yee v. City of Escondido, 503 U.S. 519, 529 (1992)); cf. Buffalo Teachers Fed., 464 F.3d at 374 ("The fact of a taking is fairly obvious in physical takings cases.").

By contrast, where the government acts "in a regulatory capacity, such as when it bans certain uses of private property, or limits the rent a landlord may charge tenants, or prohibits landlords from evicting tenants for refusing to pay higher rents," its actions are considered under the framework of regulatory takings. Buffalo Teachers Fed., 464 F.3d at 374 (internal citations omitted). "The gravamen of a regulatory taking claim is that the state regulation goes too far and in essence 'effects a taking.'" Id. (citations omitted).

The Supreme Court articulated three guideposts for evaluating whether a regulation amounts to the functional equivalent of a physical appropriation: (1) "the economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) the "character of the governmental action," in particular "whether it amounts to a physical invasion or instead merely affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good." Penn Central Transp. Co., 438 U.S. at 124. (citations omitted).

Here, Plaintiff has not plausibly pled any of the Penn Central factors. Plaintiff alleges that the Guaranty Law "amounts to a complete elimination of the value and total loss of the Guaranty," and that the Guaranty Law's economic impact and interference with Plaintiff's investment-backed expectations are severe because the Guaranty Law completely and permanently

8

prevents recovery from the guarantor. See Am. Compl. at ¶ 57-61. But, these allegations misconstrue the scope of the Guaranty Law. The Guaranty Law does not completely eliminate the value of the Guaranty or of Plaintiff's lease. The Guaranty Law only prevents enforcement of personal guaranties as to debts that accrued during a limited time period – March 7, 2020 to June 30, 2021. See Admin. Code § 22-1005. The value of Plaintiff's guaranty remains intact for debts arising outside of that time period, and in cases where the tenant was not subject to closure under the delineated Executive Orders.  Importantly, the Guaranty Law leaves the alleged underlying debt intact. Even if Plaintiff's tenants were unable to pay rent during the effective period of the Guaranty Law, the Law does not nullify or cancel those rent obligations; it merely limits one avenue of recovery. Plaintiff may, if it desires, still attempt to collect any arrears from tenants or negotiate a resolution.

Moreover, Plaintiff's allegations are wholly conclusory. Ashcroft v. Iqbal, 556 U.S. 662, 678. Plaintiff bears a "heavy burden" in attempting to plead that a governmental action effects a regulatory taking. Buffalo Teachers Fed'n, 464 F.3d at 375 (citing Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 493 (1987)). Thread-bare factual allegations of harm, such as those offered by Plaintiff, do not satisfy the Penn Central inquiry. A specific, detailed showing of how a plaintiff is harmed is required to plausibly plead that a regulatory taking has occurred. See, e.g., Kabrovski v. City of Rochester, 149 F. Supp. 3d 413, 424-25 (W.D.N.Y. 2015) (holding that economic impact alleged in "vague and conclusory terms," such as alleging "reduced business and lost revenues," does not satisfy Penn Central); see also Singer v. City of N.Y., 417 F. Supp. 3d 297, 327 (S.D.N.Y. 2019) (rejecting takings argument where "Plaintiffs do no more than assert, in entirely conclusory fashion," that the challenged action "would constitute a taking under applicable law."); Heidel v. Hochul, 2021 U.S. Dist. LEXIS 203572, at *23 (S.D.N.Y. Oct. 21,

2021) (PKC)) ("The allegation that a plaintiff has been deprived of an economically viable, beneficial or productive use of real property is a legal conclusion that must be supported by allegations of fact."). Plaintiff has failed to state a regulatory taking claim.

**B.      Plaintiff Fails to State a Claim Under the Due Process Clause.**

Plaintiff also fails to plausibly allege a Due Process claim under the federal and state constitutions.  A procedural due process claim requires a plaintiff to satisfy three elements: "To plead  a violation of procedural due process, . . . a plaintiff must first identify a property right, second show that the government has deprived him of that right, and third show that the deprivation was effected without due process." Gizzo v. Ben-Habib, 44 F. Supp. 3d 374, 380–81 (S.D.N.Y. 2014), citing J.S. v. T'Kach, 714 F.3d 99, 105 (2d Cir. 2013). All three elements are lacking here.

Plaintiff alleges that it has been deprived of a cause of action. Am. Compl. at ¶ 69. Although the Supreme Court in Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982) stated that "a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause[,]" (Logan, 455 U.S. 422, 428-429 (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)), Logan dealt with *access* to that adjudicatory process. "The Court traditionally has held that the Due Process Clauses protect civil litigants who seek recourse in the courts, either as defendants hoping to protect their property or as plaintiffs attempting to redress grievances." Id. at 429.  Indeed, a cause of action "is property of a substantially different nature than real or personal property or vested intangible rights," and "does not afford the holder the traditional bundle of rights associated with the ownership of property. Instead, it represents a right to assert a claim for compensation or some other form of judicial relief." Worldwide Directories, S.A. De C.V. v. Yahoo! Inc., 2016 U.S. Dist LEXIS 44265, at *19-20 (S.D.N.Y. Mar. 31, 2016, No. 14-CV-7349 (AJN)) (emphasis added) (citations omitted). The Guaranty Law does not prevent Plaintiff from accessing the Court to have its claims heard against its tenant or against the

guarantor. In fact, Plaintiff alleges that it previously commenced an action for the recovery of rent in State Court. Am. Compl. at ¶23. Rather, the Guaranty Law serves as a defense to enforceability of personal guaranties in certain circumstances, and it may be invoked as a defense in litigation between commercial landlords and guarantors who are natural persons. Notably, in Logan the Court recognized that "the State remains free to create substantive defenses or immunities for use in adjudication[.]" Id. at 432.

While Plaintiff does have a right to ownership of its property, there is no constitutional right to rent that property without government regulation. Greystone Hotel Co. v. City of NY, 13 F. Supp.2d 524, 528 (S.D.N.Y. 1998). In any event, Plaintiff has not lost any legal claim to rent for the entirety of any term of occupancy. While personal guaranties may be unenforceable as to debts that accrued during the peak of the COVID-19 crisis where the commercial tenant was forced to close by certain Executive Orders, the Guaranty Law is not a debt forgiveness law. See Admin. Code § 22-1005. Property owners are still owed rent for the entire period of occupancy, and owners may initiate legal proceedings against tenants to collect any arrears, or may at any time engage in negotiations with tenants and guarantors regarding occupancy and payment.

Finally, even if Plaintiff had identified an independently justiciable property right and had shown that it had been deprived of it in some way, this deprivation is not without process. First, the legislative process typically provides all the process that is due. See, e.g., Bi-Metallic Inv. Co. v. State Bd. of Equalization, 239 U.S. 441, 445 (1915) (the Constitution does not require that every individual affected by a legislative determination receive individual notice of such action, even where it results in a deprivation of property); see also Rogin v. Bensalem Twp., 616 F.2d 680, 693 (3d Cir. 1980) ("the protections of procedural due process do not extend to

11

legislative actions.") <u>cert</u>. <u>denied</u>, <u>Mark-Garner Assoc., Inc. v. Bensalem Twp.</u>, 450 U.S. 1029 (1981). Moreover, Plaintiff (a) may still commence proceedings against tenants, as it has done so here and in the prior action in state court, and (b) commence proceedings against personal guarantors for debts that did not accrue in the statutory exclusion window or for any debts if the commercial tenant was not subject to the delineated Executive Orders. Plaintiff has recourse against non-paying tenants.

In sum, Plaintiffs' conclusory allegations that their procedural due process have been violated are not sufficient to give rise to a plausible cause of action.

**C.     Plaintiff Fails to State a Claim Under the Contracts Clause.**

Plaintiff alleges that the Guaranty Law violates the Contract Clause of the U.S. Constitution (U.S. Const., art. I, § 10, cl. 1.). Am. Compl. at ¶¶ 30-51. "To state a claim for violation of the Contract Clause, the complaint must allege sufficient facts to demonstrate that a state law has 'operated as a substantial impairment of a contractual relationship.'" <u>Harmon v. Markus</u>, 412 F. App'x 420, 423 (2d Cir. 2011) (<u>quoting</u> <u>Gen. Motors Corp. v. Romein</u>, 503 U.S. 181, 186 (1992)). If a law substantially impairs a contract, it must serve a significant and legitimate public interest and the means must be reasonable and appropriate.  <u>Gen. Motors Corp</u>. at 185-186.

The substantial impairment inquiry asks "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." <u>Melendez v. City of NY</u>, 16 F.4th 992, 1033 (2d Cir. 2021) (<u>quoting</u> (<u>Sveen v. Melin</u>, ___ U.S.___, 138 S Ct 1815 at 1822 (2018)). Plaintiff has not plausibly pled any of these components.

<u>Melendez</u> presented a similar challenge to the Guaranty Law; there the Second Circuit reversed the dismissal of a Contract Clause claim. In holding that the plaintiffs had plausibly pled a substantial impairment of their contract, the Court highlighted the pleadings

record. The Court noted plaintiffs' allegations that they "would not have entered into commercial leases" without a personal guaranty, and that the commercial tenants had "little-to-no assets." Melendez, 16 F.4th at 1009. The Court further noted that "one plaintiff alleged that personal guaranties were 'critical inducement[s] . . . to enter into leases with commercial tenants[.]'" Id. at 1033-34. The Court reiterated, "[h]ere again, on a motion to dismiss, we must accept as true plaintiffs' assertion that personal guaranties play this indispensable role in commercial leases." Id. at 1034.

By contrast, Plaintiff here merely alleges that the Guaranty Law substantially impairs its contract by "disrupting Plaintiff's reasonable expectations under the Lease and Guaranty[,]" and by "rendering the Guaranty valueless." Am. Compl. at ¶¶ 37-39. These allegations are wholly conclusory. Iqbal, 556 U.S. at 678. Plaintiff goes on to cherry-pick key language from Melendez (Am. Compl at ¶¶ 37-46), however, Plaintiff does not provide any factual allegations to support its conclusions. Plaintiff does not describe the nature of its contractual relationship with the guarantor, nor does Plaintiff allege the guaranty is an indispensable part of Plaintiff's business. Plaintiff provides no details apart from alleging the existence of the guaranty. Therefore, Plaintiff failed to plausibly plead that the Guaranty Law substantially impairs its contract.

Because Plaintiff has not plausibly pled a substantial impairment of a contract, this Court need not continue its inquiry under the Contracts Clause. Allied Structural Steel Co. v.

Spannaus, 438 U.S. 234, 245 (1978) (noting that "an impairment effecting only minimal alteration of contractual obligations may bear so little weight as to end the inquiry at its first stage").[5]

## D.     The Guaranty Law is Consistent With New York State Law.

Lastly, Plaintiff claims that the Guaranty Law is inconsistent with the New York State Constitution Article IX and the Municipal Home Rule Law ("MHRL"). Am. Compl. at ¶¶ 74-84. As a preliminary matter, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state constitutional claims pursuant to 28 U.S.C. § 1367(c) because, as set forth above, the claims over which the Court has original jurisdiction (i.e., the federal claims) must be dismissed, and a balancing of the values of judicial economy, convenience, fairness, and comity tip in Defendants' favor. Kolari v. N.Y. Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006); see also Melendez v. City of N.Y., 503 F. Supp. 3d 13, 27 n.8 (S.D.N.Y. 2020), rev'd on other grounds, 16 F.4th 992 (2d Cir. 2021). However, should this Court exercise supplemental jurisdiction, the Court should dismiss Plaintiff's state law claims because these claims are similarly deficient and are refuted by the plain language of the New York State Constitution and the MHRL.

The New York State Constitution provides that, in furtherance of "[e]ffective local self-government and intergovernmental cooperation," "[e]very local government shall have power to adopt local laws as provided by this Article." Article IX.  N.Y. CONST., art. IX, § 1. It also provides that the City "shall have power to adopt and amend local laws not inconsistent with the

---

[5] Even if this Court determines that plaintiff has pled a substantial impairment of its contract, the Second Circuit confirmed that the Guaranty Law serves a significant and legitimate public purpose. Melendez, 16 F.4th at 1037-38 (finding that the City plausibly asserted a legitimate public purpose). While the Court in Melendez questioned the reasonableness and appropriateness of the Guaranty Law, it determined that such a question could not be determined on a motion to dismiss and remanded to the District Court for further proceedings. See Melendez, 16 F.4th at 1047. As such, this Court should defer any decision as to the reasonableness of the Guaranty Law pending the outcome of Melendez. Should this Court reach the question of the reasonableness of the Guaranty Law, City Defendant respectfully requests an opportunity to submit supplemental briefing.

provisions of this constitution or any general law" (i) "relating to its property, affairs or government," and (ii) "relating to . . . [t]he government, protection, order, conduct, safety, health and well-being of persons or property therein" "whether or not they relate to the [City's] property, affairs or government," N.Y. CONST., art. IX, § 2(c)(ii)(10). This general police power of local governments is "construed liberally in New York." N.Y. Pet Welfare Ass'n v. City of N.Y., 850 F.3d 79, 92-93 (2d Cir. 2017) (citing N.Y. CONST., art. IX, § 3(c)), cert. denied (NY Pet Welfare Assn. v. City of NY, ___U.S.___, 138 S Ct 131 (2017)).

"To implement article IX [of the New York Constitution], the Legislature enacted the Municipal Home Rule Law." DJL Rest. Corp. v. City of New York, 96 N.Y.2d 91, 94 (2001) (internal citation omitted); see also MHRL § 50(1). By its own terms, the MHRL reiterates this broad delegation of power which "gives a municipality, such as the City of New York, the power to enact local laws for the 'government, protection, order, conduct, safety, health and well-being of persons or property therein.'" Id. (quoting MHRL §§ 10(1)(ii)(a)(11)-(12)).

Plaintiff alleges that the Guaranty Law violates the N.Y. Constitution and the MHRL because it conflicts with the Due Process and Takings clauses of the New York State Constitution. Am. Compl. at ¶¶ 74-84. As set forth in Points I A and B, supra, Plaintiff has not plausibly pled claims under the State Constitution's Due Process or Takings clauses, which are coextensive with the Federal Constitution. See Guan N. v. NYC Dep't of Educ., 2013 U.S. Dist. LEXIS 2204, at *58 (S.D.N.Y. Jan. 7, 2013) (The New York State Constitution's guarantee of Due Process is "virtually coextensive with [that] of the United States Constitution.") (quoting Coakley v. Jaffe, 49 F. Supp. 2d 615, 628 (S.D.N.Y. 1999)); Heidel v. Hochul, 2021 U.S. Dist. LEXIS 203572, *22 (S.D.N.Y. Oct. 21, 2021) ("The guarantee against Takings provided by the New York Constitution is generally treated as coextensive to that of the U.S. Constitution.") (citing Am. Econ.

<u>Ins. Co. v. State</u>, 30 N.Y.3d 136, 155 (2017)). Nor does the Complaint articulate any direct conflict between the Guaranty Law and any state statute.  Indeed, there is no such conflict. <u>See</u> <u>Melendez</u>, 503 F. Supp. 3d at 38 ("the Court can finds no state law prohibiting the temporary limitation of personal guaranties, nor does any of the Governor's pandemic-related EOs address this issue. Accordingly, Plaintiffs have failed to plausibly plead conflict preemption") <u>rev'd on other grounds</u>, 16 F.4th 992 (2d Cir. 2021).

Plaintiff fails to plausibly plead a conflict between the Guaranty Law and the New York State Constitution or the Municipal Home Rule Law.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant City Defendant's motion to dismiss the Amended Complaint.

Dated:        New York, New York
              August 24, 2022

**HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel of the
   City of New York
Attorney for Defendant City of New York
100 Church Street
New York, New York 10007
Tel: (212) 356-2197
Email: sriggs@law.nyc.gov

By: _____/S/_____
Scali Riggs
Assistant Corporation Counsel

16