UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                                          :

RURADAN CORPORATION,               :

                         Plaintiff,      :

                                            :            22-cv-3074 (LJL)

        -v-                   :

                                            :       OPINION AND ORDER

CITY OF NEW YORK ET AL.,      :

                         Defendants.    :

                                            :
----------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_04/10/2024__

LEWIS J. LIMAN, United States District Judge:

       Plaintiff the Ruradan Corporation ("Plaintiff") brings this action against the City of New York (the "City"), Jin Choi ("Choi"), Matthew Ahn ("Ahn"), Raymond Kim ("Kim"), L&K 48 Venture, Inc., doing business as Toasties ("L&K Venture"), and JLee 19 Corp. ("JLee" and, together with Choi, Ahn, Kim, and L&K Venture, the "Toasties Defendants"), asserting claims against the City for violations of the Contracts Clause, Article I, Section X, Clause I of the United States Constitution, the Takings Clause of the Fifth Amendment to the United States Constitution, the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and Article IX of the New York Constitution and the Municipal Home Rule Law, and against the Toasties Defendants for breach of contract. Dkt. No. 40. The City moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on the grounds, among others, that Plaintiff lacks Article III standing to pursue its claims against the City. Dkt. No. 124.

       For the following reasons, the City's motion for summary judgment is granted.

## BACKGROUND

The following facts are drawn from the parties' statements of material facts submitted pursuant to Local Rule 56.1 and the materials submitted in connection with the motion.[1] Dkt. Nos. 125, 136. The facts are undisputed unless otherwise indicated. The record is construed in favor of Plaintiff as the nonmoving party.

Plaintiff is a New York corporation that is the owner and landlord of a building (the "Building") located at 8 East 48th Street, New York, New York. Dkt. No. 125 ¶ 1; Dkt. No. 136 ¶ 1. It leased premises (the "Premises") in the Building to Defendant L&K Venture pursuant to a commercial lease dated May 15, 2014 (the "Lease"). Dkt. No. 125 ¶ 9; Dkt. No. 136 ¶ 9. The Lease was initially for a term through August 31, 2029. Dkt. No. 125 ¶ 9; Dkt. No. 136 ¶ 9. Also on May 15, 2014, Defendants Jin Choi, Matthew Ahn, and Raymond Kim (the "Guarantors") executed a guaranty to Plaintiff (the "Guaranty"), personally guaranteeing L&K Venture's obligations under the Lease. Dkt. No. 125 ¶ 11; Dkt. No. 136 ¶ 11. The Lease was subsequently assigned by L&K Venture to Defendant JLee in August 2019. Dkt. No. 125 ¶¶ 12–13; Dkt. No. 136 ¶¶ 12–13. In or about April 2020, L&K Venture and the Guarantors defaulted under the terms of the Lease and the Guaranty by failing to make payments of the sums due under the Lease. Dkt. No. 40 ¶ 22.

In March 2020, the COVID-19 pandemic spread rapidly in New York City, prompting a shutdown of businesses throughout the City and State of New York. The Second Circuit described the impact of the global pandemic on New York as follows:

---

[1] Plaintiff, the City, and the Toasties Defendants each submitted motions for summary judgment. *See* Dkt. Nos. 124, 128, 132. Because the Court in this Opinion and Order addresses only the motion for summary judgment submitted by the City, the Court considers for the purposes of this Opinion and Order only the statements of material facts submitted in connection with the City's motion. *See* Dkt. Nos. 125, 136.

It is also undisputed that New York State was hit early and hard by the pandemic. By the end of March 2020, the state had become the nation's pandemic epicenter, reporting approximately one third of infection cases nationwide, with New York City alone then accounting for one quarter of the country's virus-related deaths. In addition to causing a nationwide public health emergency, the pandemic fomented an economic crisis as government-mandated mitigation measures limited personal interactions and forced businesses to suspend or reduce operations. A few statistics make the point. In the spring of 2020, the United States experienced its sharpest economic contraction since World War II, with April 2020 unemployment numbers climbing to a record 14.4%. In New York, between February and June 2020, the unemployment rate climbed higher still, to 20.3%, with over 1.4 million people filing for benefits.

*Melendez v. City of New York*, 16 F.4th 992, 1016 (2d Cir. 2021).

Against this backdrop, on or about May 13, 2020, the City voted to authorize legislation codified at N.Y.C. Admin. Code § 22-1005 (the "Guaranty Law"), which became effective on May 26, 2020, and which, as subsequently amended, made certain guaranty provisions in commercial leases or other rental agreements unenforceable against natural persons.  Dkt. No. 125 ¶¶ 59, 67, 69; Dkt. No. 136 ¶¶ 59, 67, 69.  In particular, the Guaranty Law establishes a defense against commercial landlords seeking to enforce, under certain circumstances, personal guarantees of commercial leases for defaults that accrued between March 7, 2020 and June 30, 2021.  Dkt. No. 125 ¶¶ 69, 107; Dkt. No. 136 ¶¶ 69, 107.

## PROCEDURAL HISTORY

On April 13, 2022, Plaintiff filed this action against the City, Choi, Ahn, Kim, L&K Venture, and JLee.  Dkt. No. 1.  The City and the Toasties Defendants each filed motions to dismiss the complaint on August 1, 2022.  Dkt. Nos. 34, 37.  On August 10, 2022, Plaintiff filed an amended complaint (the "Amended Complaint"),[2] which contains five causes of action.  Dkt. No. 40.  First, Plaintiff alleges that by enacting the Guaranty Law, the City violated the Contracts

---

[2] Once Plaintiff filed its Amended Complaint, the Court dismissed the motions to dismiss the original complaint as moot.  Dkt. Nos. 42–43.

Clause, *id.* ¶¶ 30–51, the Takings Clause, *id.* ¶¶ 52–66, and the Due Process Clause, *id.* ¶¶ 67–73, of the United States Constitution.  Further, Plaintiff also alleges that the City, in enacting the Guaranty Law, violated the New York Constitution and the Municipal Home Rule Law.  *Id.* ¶¶ 74–84.  Finally, invoking the Court's supplemental jurisdiction, Plaintiff further asserts that the Toasties Defendants are liable in breach of contract for the sums owed under the Lease and the Guaranty.  *Id.* ¶¶ 85–91.

On August 24, 2022, the City moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss each of the four claims against it in the Amended Complaint for failure to state a claim upon which relief could be granted.  Dkt. Nos. 44–46.  On August 26, 2022, Plaintiff filed an application for a Clerk's certificate of default against the Toasties Defendants.  Dkt. No. 48-1.  The same day, the Toasties Defendants moved both to set aside the default and to dismiss the Amended Complaint.  Dkt. Nos. 53, 56–58.  In their memorandum of law in support of their motion to dismiss, the Toasties Defendants "adopt[ed] and incorporate[d] the City's motion papers" and also argued that, if the Court were to dismiss the federal claims, the Court should decline to exercise supplemental jurisdiction over the state-law claims.  Dkt. No. 58 at 2–4.  The Clerk of the Court entered a certificate of default against the Toasties Defendants on August 29, 2022.  Dkt. No. 59.  Plaintiff filed its opposition to both motions to dismiss the Amended Complaint on September 14, 2022, Dkt. No. 60, but did not file a response to the Toasties Defendants' motion to set aside the default.  Later that month, the City and the Toasties Defendants each filed reply memoranda of law in further support of their motions to dismiss.  Dkt. Nos. 61–62.

On March 24, 2023, the Court issued an Opinion and Order granting the motion to dismiss Plaintiff's claims under the Takings Clause and the Due Process Clause of the United

States Constitution, and Plaintiff's claim brought under the New York Constitution and

Municipal Home Rule Law, but denying the motion to dismiss with respect to the claim brought

under the Contracts Clause of the United States Constitution, and the claim brought for breach of

contract.  Dkt. No. 89.  The Court also granted the Toasties Defendants' motion to set aside the

default as against them.  *Id.*  At that time, no issue was raised with respect to Plaintiff's standing

to bring its claims against the City.

 The Toasties Defendants and the City filed their answers to the Amended Complaint on

April 3, 2023 and April 6, 2023, respectively.  Dkt. Nos. 92, 93.  On December 22, 2023, the

City, *see* Dkt. No. 124, the Toasties Defendants, *see* Dkt. No. 132, and Plaintiff, *see* Dkt. No.

128, each moved for summary judgment.  As relevant here, the City submitted, along with its

motion for summary judgment, a Rule 56.1 statement and a declaration and memorandum of law

in support of the motion.  Dkt. Nos. 125–27.  On January 19, 2024, Plaintiff filed its counter to

the City's Rule 56.1 statement, along with a declaration and memorandum of law in opposition

to the City's motion for summary judgment.  Dkt. Nos. 136–38.  On January 26, 2024, the City

filed a reply memorandum of law in further support of its motion for summary judgment.  Dkt.

No. 147.

 The Court held oral argument on the City's motion for summary judgment on February 6,

2024.  *See* Dkt. No. 161.  At the conclusion of argument, the Court directed the parties to submit

supplemental memoranda on three questions: whether Plaintiff had abandoned any claim for

monetary damages against the City, whether Plaintiff had standing to seek monetary damages

against the City, and whether suits for violations of the Contracts Clause may be brought under

Section 1983.  Dkt. No. 156.  Supplemental memoranda were filed by the City, Plaintiff, and the

Toasties Defendants on February 28, 2024.  Dkt. Nos. 163–65.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And "[a]n issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009).

The party seeking summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  If the movant meets its burden, "the nonmoving party must come forward with admissible evidence to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeusert Co.*, 537 F.3d 140, 145 (2d Cir. 2008).  To survive summary judgment, the nonmoving party "may not rely on mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted), and must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).  But if "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir. 1983).

Local Civil Rule 56.1 of the Southern District of New York sets forth specific requirements about how the facts relied upon by the moving party and disputed by the opposing

party are to be presented.  Any party moving for summary judgment must "annex[] to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  S.D.N.Y. L.R. 56.1(a).  Local Rule 56.1(b), in turn, requires the party opposing the motion to "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  S.D.N.Y. L.R. 56.1(b).  All statements in a Local Rule 56.1 submission "must be followed by citation to evidence which would be admissible."  S.D.N.Y. L.R. 56.1(d).  "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  L.R. 56.1(c).  In accordance with Local Rule 56.1, "the movant's statements are deemed to be admitted where [the non-moving party] has failed to specifically controvert them with citations to the record."  *Rhee v. SHVMS, LLC*, 2023 WL 3319532, at *4 (S.D.N.Y. May 8, 2023) (citation and quotation marks omitted).

## DISCUSSION

## I.  **Plaintiff Abandoned Any Claim for Monetary Damages Against the City**

At the outset, Plaintiff and the City dispute whether Plaintiff has abandoned its claim for monetary damages as against the City.  *See* Dkt. No. 163 at 1–4; Dkt. No. 164 at 1–4.  As this case has progressed, Plaintiff's requested relief as against the City has evolved.  In its initial complaint, Plaintiff sought a declaratory judgment that the Guaranty Law violated Plaintiff's rights under United States and New York Constitutions, a declaratory judgment that the Guaranty Law is applicable only to personal guarantees executed on or after the law's effective

date with no retroactive applicability to personal guarantees executed prior to the law's effective date, and a preliminary and permanent injunction enjoining the Guaranty Law.  Dkt. No. 1 at 13–14.  Plaintiff did not, however, seek any monetary damages as against the City; instead, Plaintiff sought monetary damages only as against the Toasties Defendants.  *Id.*  In the Amended Complaint, filed four months after the initial complaint, Plaintiff asserted a claim for monetary damages "[a]s against all Defendants," Dkt. No. 40 at 16, which included the City.

The City moved for summary judgment dismissing the Amended Complaint in its entirety based upon three primary arguments: (1) Plaintiff lacks Article III standing to bring suit against the City; (2) the Guaranty Law does not violate the Contracts Clause; and (3) Plaintiff is not entitled to damages against the City under Section 1983.  Dkt. No. 127.  On the third point, regarding damages, the City argued both that Section 1983 does not provide a private right of action for Contracts Clause claims, *id.* at 31–32, and that Plaintiff could not show any damages attributable to the Guaranty Law, *id.* at 32–33.  The City was explicit in its argument: "even if this Court holds the Guaranty Law to be unconstitutional, the City's summary judgment motion should be granted because Plaintiff is not entitled to damages from the City."  *Id.* at 5.

Plaintiff submitted a single memorandum of law in opposition to both the City's and the Toasties Defendants' motions for summary judgment.  Dkt. No. 138.  The memorandum was in two parts.  The first part responded to the first two of the City's arguments and contended that Plaintiff had established Article III standing as against the City and that the Guaranty Law violated the Contracts Clause.  *Id.* at 12–26. The second part argued that the Toasties Defendants' arguments—namely that the Toasties Defendants' were entitled to summary judgment on the basis of their affirmative defenses, that Plaintiff had failed to mitigate damages, and that Plaintiff was bound by the doctrine of judicial estoppel—were meritless, and contended

that summary judgment should be granted to Plaintiff on the lease, as modified, and on the guaranty. *Id.* at 26–35. Plaintiff's memorandum of law in opposition to Defendants' motions for summary judgment was silent, however, with respect to the City's argument that Section 1983 did not provide a private right of action for claims brought under the Contracts Clause. In the section of the memorandum on its standing, Plaintiff argued that it had suffered injury in the form of a monetary loss as a result of the Toasties Defendants' default and that the Guaranty Law forever extinguished the Guaranty. *Id.* at 17–18. But Plaintiff did not suggest that the rent it had been unable to recover from the Toasties' Defendants could be received as damages from the City, or that the injury it suffered could be redressed by monetary relief against the City. Instead, its only argument with respect to redressability was that if Plaintiff prevailed at trial against the City, "[t]he Toasties Defendants will be unable to use the Guaranty Law as a total defense to bar recovery on the subject Guaranty." *Id.* at 18. Plaintiff's memorandum of law in opposition to Defendants' motions for summary judgment was therefore silent with respect to monetary damages in two respects: first, it did not invoke its claim for monetary damages in its argument that it had Article III standing, and second, it did not respond to the City's assertion that Section 1983 did not provide a private right of action for claims brought under the Contracts Clause.

At oral argument on the City's motion for summary judgment, the City asserted, based upon the briefing submitted on the motion, that Plaintiff may have abandoned its claim for monetary damages as against the City. *See* Dkt. No. 161 at 4:20–23 ("Plaintiff did not respond to our briefing concerning their inability to obtain damages against the City, so we believe its waived by not addressing it in response to our motion."). Plaintiff responded that it had not waived its request for monetary damages, noting that the request for damages appeared in the

Amended Complaint, and positing that because "the Second Circuit has already ruled that there has been an injury effect by the issuance of the Guaranty Law[,] . . . whether or not [it could] later seek damages at trial is a separate issue." *Id.* at 15:9–15. Later, when asked whether it sought additional relief as against the City beyond declaratory and injunctive relief, Plaintiff responded that its Amended Complaint "also set forth a claim for damages," *id.* at 19:21, but that the relief was "something that [it] would address . . . at trial because [it did not] know what the damages would possibly be because [the damages were] ongoing. It's attorneys' fees. It's basically everything that [Plaintiff] had to do to chase after the Toasties Defendants for the amount of money that's due and owing under the lease and the guarantee in the case," *id.* at 19:25–20:5.

Plaintiff has abandoned its claim against the City for monetary damages. The Second Circuit has held that where a counseled party responds to some claims on a motion for summary judgment but not others, a district court may deem the unaddressed claims to have been abandoned. *See Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."). The court in *Jackson* noted that "preparation of a response to a motion for summary judgment is a particularly appropriate time for a non-movant party to decide whether to pursue or abandon some claims or defenses" and that Rule 56 is "a highly useful method of narrowing the issues for trial." *Id.* Accordingly, where, on a motion for summary judgment, a counseled party responds to some claims but not to others, "an inference may be fairly drawn from the papers and circumstances viewed as a whole" that the non-moving party intends to abandon the claims that have been challenged but that it has not defended. *Id.*; *see also Moll v. Telesector Res. Grp., Inc.*, 94 F.4th

218, 257 (2d Cir. 2024); *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (holding that plaintiff abandoned claims by failing to argue that they should survive the motion for summary judgment).  The rule has been applied across a wide range of circumstances by numerous Judges in this District.  *See Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 584 n.12 (S.D.N.Y. 2021); *Stewart v. Fashion Inst. of Tech.*, 2020 WL 6712267, at *12 n.2 (S.D.N.Y. Nov. 16, 2020); *Estate of M.D. by DeCosmo v. New York*, 241 F. Supp. 3d 413, 423 (S.D.N.Y. 2017); *Sullivan v. City of New York*, 2015 WL 5025296, at *4 (S.D.N.Y. Aug. 25, 2015), *aff'd*, 690 F. App'x 63 (2d Cir. 2017) (summary order); *Gun Hill Road Serv. Station, Inc. v. ExxonMobil Oil Corp.*, 2013 WL 1804493, at *11 n.5 (S.D.N.Y. Apr. 18, 2013) (holding that a party waived argument in failing to advance it in opposing summary judgment); *see also Wen v. N.Y.C. Reg'l Ctr., LLC*, 2023 WL 6317995, at *13 (S.D.N.Y. Sept. 28, 2023); *Lonstein L. Off., P.C. v. Evanston Ins. Co.*, 2022 WL 311391, at *12 n.7 (S.D.N.Y. Feb. 2, 2022); *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 617–18 (S.D.N.Y. 2015); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014); *W. Bulk Carriers KS v. Centauri Shipping Ltd.*, 2013 WL 1385212, at *3 (S.D.N.Y. Mar. 11, 2013) (Sullivan, J.); *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *21, *23 (S.D.N.Y. Sept. 28, 2012) (Sullivan, J.), *aff'd sub nom.*, *City of Pontiac's & Fireman's Retirement Sys. v. UBS AG*, 753 F.3d 173 (2d Cir. 2014).

Plaintiff argues it should not be deemed to have abandoned its claim for damages because the Amended Complaint contains an *ad damnum* clause stating that Plaintiff is entitled to a judgment against "all Defendants" in the sum of "$1,000,127.27, together with legal interest" and to attorneys' fees and expenses and costs and disbursements, Dkt. No. 40 at 16–17; *see* Dkt. No. 164 at 1, and because at oral argument it reserved its right to assert monetary damages

against the City, Dkt. No. 164 at 2.  It also claims that in its memorandum of law in support of its

own motion for summary judgment, that it was entitled to costs and attorneys' fees in connection

with the lawsuit.  *Id.* at 3.[3]  None of those arguments is availing.  The Second Circuit has

reiterated that "[p]leadings often are designed to include all possible claims or defenses, and

parties are always free to abandon some of them."  *Kovaco*, 834 F.3d at 143 (quoting *Jackson*,

766 F.3d at 196).  That Plaintiff pleaded a claim for damages against the City does not relieve it

from the effect of its failure to defend that claim in response to the City's motion for summary

judgment.  *Id.*  It is at the time of the motion for summary judgment that a party can decide

which claim to pursue and which not.  *Jackson*, 766 F.3d at 196.  And the oblique reference to

which Plaintiff cites in its memorandum in opposition to Defendants' motion for summary

judgment hardly responded to the City's argument.  It asserted that "the Toasties Defendants"—

not the City—were indebted under the Lease and Guaranty and that, accordingly, Plaintiff was

"entitled to costs and reasonable attorneys' fees."  Dkt. No. 138 at 29.  It did not argue that the

City was liable under Section 1983 or otherwise for costs and reasonable attorneys' fees, nor

would such an argument have been responsive to the City's argument that Plaintiff lacked

standing against it.  "[A]n interest in attorney's fees is, of course, insufficient to create an Article

III case or controversy where none exists on the merits of the underlying claim."  *Lewis v. Cont'l*

---

[3] Plaintiff cites to Dkt. No. 128 at 34 for the proposition that it claimed it was entitled to costs
and attorneys' fees, but the language it quotes is at Dkt. No. 138 at 29.  In Plaintiff's notice of
motion for summary judgment, Dkt. No. 128, Plaintiff stated that it was entitled to judgment
against all Defendants in the sum of $1,000,127.27, "as well as costs and reasonable attorneys'
fees due pursuant to the Lease," *id.* at 2.  However, Plaintiff's only argument regarding damages
in its memorandum in opposition to Defendants' motion for summary judgment was that "the
Toasties Defendants [are] indebted under the Lease, as modified, and Guaranty, in the sum of
$1,000,127.27 plus legal interest from April 13, 2022 pursuant to the terms thereunder, [and]
Plaintiff is entitled to costs and reasonable attorneys' fees."  Dkt. No. 138 at 29.  Plaintiff did
not, however, argue in the memorandum that it was entitled to damages or costs or attorneys'
fees against the City.

*Bank Corp.*, 494 U.S. 472, 480 (1990).  It thus was appropriate for the Court to "infer from

[Plaintiff's] partial opposition" that any claim for monetary damages had been abandoned.

*Kovaco*, 834 F.3d at 143 (quoting *Jackson*, 766 F.3d at 198)).

Likewise, Plaintiff's "reservation" at oral argument of its right to seek damages from the

City cannot rescue its claim because the question presented by the Court at oral argument, and

argued by the parties, was whether Plaintiff had already abandoned its claim by failing to support

it in opposition to the City's motion for summary judgment.  Plaintiff's briefing—submitted in

response to the Court's invitation at oral argument for briefing on the question of whether

Plaintiff had prior to oral argument already abandoned its claim—is tantamount to a request for a

do-over.  Plaintiff does not identify any reason the Court should not conclude that any request for

money damages against the City was already abandoned at the time Plaintiff submitted his

memorandum in opposition to the motion for summary judgment.  The parties and the Court are

entitled to rely on the memoranda and Rule 56.1 statements submitted in support of and in

opposition to summary judgment.  It is not sufficient that the non-moving party, confronted with

the consequences of its earlier decision not to defend a claim, later has second thoughts.  *See*

*Bascom v. Fried*, 116 F. App'x 300, 302 (2d Cir. 2004) (summary order); *cf. Edward B. Marks*

*Music Corp. v. Cont'l Rec. Co.*, 222 F.2d 488, 492 (2d Cir.), *cert. denied*, 350 U.S. 861 (1955)

("[A] plaintiff in his opposition to a motion for summary judgment cannot abandon an issue and

then, after an unpalatable decision by the trial judge, on appeal, by drawing on the pleadings

resurrect the abandoned issue."); *Sabra v. Maricopa Cnty. Comm. Coll. Dist.*, 44 F.4th 867, 883

n.7 (9th Cir. 2022) ("[A] party cannot resuscitate at oral argument an abandoned claim that 'was

not presented in the briefs[.]'" (quoting *United States v. Juvenile Male*, 670 F.3d 999, 1014–15 (9th Cir. 2012))).[4]

The Court therefore concludes that Plaintiff abandoned its claim for monetary damages as against the City by failing to support it in its response to the City's motion for summary judgment.[5]

## II.  Plaintiff Lacks Article III Standing to Assert Its Claim Under the Contracts Clause

The City challenges Plaintiff's standing to bring the instant action against it.  Dkt. No. 127 at 12–16.  "Article III of the Constitution limits federal courts to deciding 'Cases' and 'Controversies.'"  *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019); *see also Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019).  "To have standing, a plaintiff must 'present an injury that

---

[4] Indeed, when the issue of damages was raised at oral argument it was only in the most circumspect and indirect manner.  When the Court pressed Plaintiff's counsel that a case it had been relying upon, *Iten v. County of Los Angeles*, 81 F.4th 979 (9th Cir. 2023), contained a claim for damages which was absent from Plaintiff's briefing here, Plaintiff did not dispute that it had not raised the issue of damages under Section 1983 in response to Defendant's summary judgment motion or that it was resting its argument on its claim for declaratory relief.  Counsel stated: "we're seeking a declaratory judgment against the City, and whether or not we later seek damages at trial is a separate issue."  Dkt. No. 161 at 15:13–15.

[5] The Court therefore need not address the challenging question of whether Section 1983 creates a private right of action for damages against a city government where that city government is alleged to have enacted legislation in violation of the Contracts Clause.  The Second Circuit has noted the unresolved tension regarding the issue in Supreme Court case law.  *See Haley v. Pataki*, 106 F.3d 478, 482 n.2 (2d Cir. 1997) ("[I]t is not clear that suits for violations of the Contract Clause may be brought under section 1983[.]" (citing *Carter v. Greenhow*, 114 U.S. 317 (1885), and *Dennis v. Higgins*, 498 U.S. 439 (1991))).  There is a split among circuits as to whether Section 1983 creates a private right of action for violations of the Contracts Clause.  *Compare S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (per curiam) ("The right of a party not to have a State, or a political subdivision thereof, impair its obligations of contract is a right secured by the first article of the United States Constitution.  A deprivation of that right may therefore give rise to a cause of action under section 1983."), *with Crosby v. City of Gastonia*, 635 F.3d 634, 640 (4th Cir. 2011) ("Section 1983 provides no basis to complain of an alleged impairment in the first instance.") *and Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017) ("We join the Fourth Circuit and hold that an alleged Contracts Clause violation cannot give rise to a cause of action under § 1983.").  The Second Circuit did not directly address the issue in its opinion in *Melendez* regarding the application of the Contracts Clause to the Guaranty Law.  *Melendez*, 16 F.4th at 1032–47.

is concrete, particularized and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "[S]tanding is not dispensed in gross." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). "To the contrary, 'a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'" *Id.* (quoting *Davis*, 554 U.S. at 734). "A plaintiff has standing only if he can 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *California v. Texas*, 593 U.S. 659, 668–69 (2021) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342(2006)). Finally, and as relevant here, "[t]he Declaratory Judgment Act alone does not provide a court with jurisdiction." *California v. Texas*, 593 U.S. at 672 (internal citation omitted).

The central issue in the instant motion is whether a plaintiff has standing to sue a city which has passed a law that the plaintiff contends is unconstitutional, but where the city has no power to enforce the law, and where the sole forms of relief sought as against the city are a declaratory judgment that the city has violated the plaintiff's constitutional rights, and an injunction of the challenged law. The City argues that it did not—and could not—do anything more than enact the Guaranty Law and that, as a result, Plaintiff has not alleged and cannot establish an injury traceable to actions of the City. Dkt. No. 127 at 13–14. In the City's view, Plaintiff's injury was caused by the failures of L&K Venture to pay the sums due under the Lease and the Guarantors' failure to satisfy their obligations under the Guaranty, and that such injury will be redressed by an order requiring either of them to pay. *Id.* at 15. The City also argues that, because the City plays no role in enforcing the Guaranty Law, there is no decree that

the Court could issue with respect to the City that would redress Plaintiff's injury and that Plaintiff therefore lacks Article III standing with respect to its claim against the City.  *Id.* at 16.

Plaintiff responds that it has demonstrated an injury in fact, that such injury is fairly traceable to the City's enactment of the Guaranty Law, that declaring the Guaranty Law unconstitutional and enjoining the City from enforcing the Law would redress its injury, and that it therefore has standing under Article III to bring its claim against the City.  Dkt. No. 138 at 17–19.  With respect to its injury, Plaintiff asserts that it has lost over $1,500,000 because it has been unable to obtain redress for the Toasties Defendants' default.  *Id.* at 17.  Next, Plaintiff argues that the City's enactment of the Guaranty Law caused such loss by rendering the Guaranty unenforceable.  *Id.* at 18.  Finally, Plaintiff argues that a declaratory judgment that the Guaranty Law is unconstitutional and an injunction barring enforcement of the law would allow it to obtain redress for the Toasties Defendants' default.  *Id.*[6]

### A.      The Court Assumes that Plaintiff Has Demonstrated an Injury in Fact

In order to establish that it has standing to bring suit, a plaintiff must first allege that it has suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (internal citations and quotation marks omitted).  "For an injury to be 'particularized,' it 'must affect the

---

[6] Plaintiff points to *Melendez v. City of New York*, 2023 WL 2746183 (S.D.N.Y. Mar. 31, 2023) to support its argument that it has standing.  In that case, the City asserted, on similar facts as the instant action, that the plaintiffs lacked standing to bring an action against the City alleging that the Guaranty Law was unconstitutional and seeking declaratory and injunctive relief.  *Id.* at *5. Judge Abrams, after concluding that the plaintiffs did have standing to bring the suit, held that "the [Guaranty] Law violates the Contracts Clause by rendering the guaranty clauses in Plaintiffs' commercial leases unenforceable for unpaid rent during the covered period, March 7, 2020 and June 30, 2021, and that Plaintiffs are entitled to summary judgment."  *Id.* at *16. Plaintiff argues that the standing issue before this Court is the same as the standing issue in front of Judge Abrams, and thus, that this Court must reach the same conclusion with respect to its standing to bring the suit.  Dkt. No. 138 at 17.  This Court, as explained in Sections I.B and I.C, *infra*, respectfully reads the cases relied upon by Judge Abrams to suggest a different outcome.

plaintiff in a personal and individual way.'"  *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1).  Although an injury must be "concrete" to confer standing—meaning it must "actually exist"—"intangible injuries can nevertheless be concrete."  *Id.* at 340.  The concreteness requirement also "does not mean . . . that the risk of real harm cannot satisfy the requirement of concreteness."  *Id.* at 341.

Plaintiff asserts that it has suffered an injury in fact in the form of its inability to enforce the Guaranty.  Dkt. No. 138 at 17.  It asserts that it "suffered a monetary loss of over $1,500,000.00 as a result of the Toasties' Defendants' default and the Guaranty Law forever extinguishes Plaintiff's Guaranty and renders it unenforceable."  *Id.* at 17–18.  The City does not challenge that Plaintiff has suffered an injury in fact.  Dkt. No. 127 at 13.  The Court notes, however, that Plaintiff alleges that the Toasties Defendants defaulted on the Lease and on the Guaranty prior to the enactment of the Guaranty Law, Dkt. No. 40 ¶¶ 17, 22, but that Plaintiff does not assert that it has tried to enforce the Guaranty in court and been denied by a court because of the Guaranty Law, or that such a rebuff may be imminent.  Nor does the Plaintiff assert that it has taken some action to discover the market value of the Lease, and compare that figure to the value of the Lease prior to the Guaranty Law's enactment.  The Court thus assumes, without deciding, that Plaintiff has suffered an injury in fact by virtue of the Toasties Defendants' default and adopts Plaintiff's characterization of the injury.

### B.    Plaintiff Has Not Alleged that the Injury Is Traceable to the City

After establishing that it has suffered an injury in fact, a plaintiff must next demonstrate that there is a "a causal connection between the injury and the conduct complained of."  *Lujan*, 504 U.S. at 560.  The injury must be "fairly . . . trace[able] to the challenged action of the *defendant*, and not . . . th[e] result[] [of] the independent action of some third party not before the court."  *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976) (emphasis added).  The

Second Circuit has held that where a plaintiff is "threatened by the enforcement of a statute that specifically targets the plaintiffs, the requirement [that an injury be fairly traceable to the challenged action] is met." *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019), *cert. denied sub nom.*, *Tong v. Tweed-New Haven Airport Auth.*, 140 S. Ct. 2508 (2020).

Plaintiff has not alleged that its injury can be fairly traced to conduct of the City. Plaintiff alleges that the Toasties Defendants have failed to pay the rent due to Plaintiff, and worries that the Guaranty Law prevents it from collecting the unpaid rent.  But the Supreme Court has held that the passage of a law itself is not sufficient to establish Article III standing. The plaintiff must "assert an injury that is the result of a statute's actual or threatened *enforcement*, whether today or in the future." *California v. Texas*, 593 U.S. at 660 (emphasis added).  And, even then, before suing the government, the plaintiff must show that some "kind of Government action or conduct has caused or will cause the injury" of which plaintiff complains. *Id*; *see Digit. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957–58 (8th Cir. 2015).  In the absence of actual or threatened government enforcement, the plaintiff's injury cannot be traced to the government's action and the plaintiff has no case or controversy with the government.

Those principles are dispositive here.  The City has no enforcement power under the Guaranty Law.  The enforcement of that law is left to the Guarantors, who might or might not seek to enforce the law, and to the courts which—in an action between a landlord and a guarantor—will have the responsibility to decide whether the Guaranty Law applies.  In short, there is nothing that a City actor has done that prevented the Guarantors from satisfying the Guaranty or that it could do to compel the Guarantors to pay on the Guaranty.  The rights that the Guarantors have under the Guaranty Law are entirely independent of any rights possessed by the

City.  If the City chose not to defend the Guaranty Law in court that would not prevent the Guarantors from invoking their rights under that law and refusing to pay Plaintiffs.  The fact that the City has chosen to defend the law does not make Plaintiff's losses attributable to the City, any more than it would had the City simply chosen to file an amicus brief in this case.

The Second Circuit's decision in *Tweed* does not require a finding of causation here.  In that case, the plaintiff was challenging a Connecticut state statute which stated that an airport runway "shall not exceed the existing paved runway length of five thousand six hundred linear feet."  930 F.3d at 69 (quoting Conn. Gen. Stat. § 15-120j(c)).  Plaintiff sued the Attorney General of Connecticut in his official capacity, seeking a declaratory judgment that the statute's limitation on the length of an airport's runway was preempted by federal law.  *Id.*  After the district court concluded that the plaintiff lacked standing to bring the suit, the Second Circuit reversed, and held that the plaintiff did have standing.  *Id.* at 72.  The challenged statute in that case, however—and unlike the statute at issue here—vested enforcement authority in the defendant.  Put differently, the court in that case actually could "prevent enforcement" of the challenged statute by enjoining a party to the suit.  *Id.* (citing *Cayuga Nation v. Tanner*, 824 F.3d 321, 332 (2d Cir. 2016)).  Here, however, an injunction upon the City would not remove an "absolute barrier" to Plaintiff's ability to redress its injury.  Plaintiff has thus not demonstrated that its injury was caused is fairly traceable to the City's enactment of the Guaranty Law.

## C.  Plaintiff Has Not Demonstrated that Declaratory or Injunctive Relief Would Redress its Injury

The City further argues that "the plaintiff lacks standing to seek a declaration that the City violated the Contracts Clause or a 'preliminary and permanent injunction[] enjoining the Guaranty Law'" because "that relief will not redress its claimed injury."  Dkt. No. 127 at 16 (quoting Dkt. No. 40 at 16) (alteration in original).  The City highlights Supreme Court precedent

holding that "[f]ederal courts lack jurisdiction to declare laws unconstitutional in the abstract or to 'enjoin challenged laws themselves.'" *Id.* (quoting *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021)). Noting that "the City does not enforce the Guaranty Law," the City asserts that "[t]here is no injunction that [a court] could issue against the City to prevent it from taking a particular unlawful action" and that plaintiff therefore "lacks standing as to its request for declaratory and injunctive relief because that relief will not redress the claimed injury." *Id.*

Plaintiff responds that "finding the Guaranty Law unconstitutional would redress Plaintiff's injury." Dkt. No. 138 at 17. According to Plaintiff, a favorable decision by the Court would redress its injury because "[t]he Toasties Defendants will be unable to use the Guaranty Law as a total defense to bar recovery on the subject Guaranty." *Id.* at 18. Plaintiff argues that it has therefore "established standing to sue for Contracts Clause violations where the 'plaintiff's inability to terminate or sue on its breached term [was] fairly traceable to [the challenged statute],' because '[b]ut for [the challenged] law, plaintiff could enforce its [contractual] provisions.'" *Id.* (quoting *General Motors LLC v. KAR Auto Grp. of Decorah, Inc.*, 2022 WL 1715216, at *5 (N.D. Iowa Mar. 11, 2022)) (alteration in original).

A declaratory judgment alone against the City would not redress Plaintiff's grievances. That judgment would be finding only against the City. It could not bind the Guarantors who would have an independent right to litigate whether the Guaranty Law is constitutional or not. *See Smith v. Bayer Corp.*, 564 U.S. 299, 312 (2011) ("A court's judgment binds only the parties to a suit, subject to a handful of discrete and limited exceptions."). To be sure, Plaintiff has also named the Guarantors in this lawsuit, but the fact that it has done so does not create a Case or Controversy against the City. "The 'plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'" *Town of Chester*, 581 U.S. at 434 (quoting

*Davis*, 554 U.S. at 734).  That Plaintiff has standing to sue the Guarantors does not give it standing against the City.

Finally, Plaintiff has identified no City officials or no City conduct which the Court might enjoin that would grant it relief from the injury of which it complains.  *See Whole Woman's Health*, 595 U.S. 30 (2021) ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves." (citing *California v. Texas*, 593 U.S. at 671–73)).  To the extent that Plaintiff seeks relief from the effect of the Guaranty Law on an action by them to enforce the Guaranty, that is relief that Plaintiff can obtain from a court in an action against the Guarantors, by virtue of the court declining to apply the law on the basis of Plaintiff's constitutional objections.  It does not lie with an injunction against the City itself. Such an injunction would not afford Plaintiff any protection from the invocation by the Guarantors of the Guaranty Law.

### III. The Court Will Exercise Supplemental Jurisdiction Over the State-Law Claims Against the Toasties Defendants

When a district court has original jurisdiction over a federal claim the court may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Such "claims that are so related to claims in the action" come from the same "common nucleus of operative fact" as the claims providing the court with original jurisdiction.  *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004), *cert. denied*, 544 U.S. 949 (2005).

Under 28 U.S.C. § 1367(c), a federal court "may decline to exercise supplemental jurisdiction over a [supplemental state-law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  If "a court grants a motion to

dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction" over the remaining related state-law claims if they derive from the same common nucleus of operative fact. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). As a general matter, "[w]hen the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.* (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966)) (footnote omitted).

In this case, the balance of the factors weighs in favor of the Court retaining jurisdiction over the breach of contract claim brought by Plaintiff against the Toasties Defendants. This case has been pending since April 2022. Dkt. No. 1. The Court decided Defendants' motion to dismiss, Dkt. No. 89, and has presided over discovery, which is now complete. The parties have agreed to a bench trial, which was originally scheduled for February 12, 2024, and which will be held on May 13, 2024. Dkt. No. 123; Feb. 7, 2024 Minute Entry. Pursuant to agreement of the parties and order of the Court, direct testimony at that hearing will be taken by affidavits and declarations; those have already been submitted. Dkt. No. 123. It is unclear whether any party will wish to cross-examine the witnesses for the other party; in any event, the evidentiary portion of the bench trial will last no more than one hour. Dkt. No. 161 at 38:17–20. The bulk of the

relevant factors—judicial efficiency, economy, and the convenience of the parties—all tilt in favor of the Court's retention of jurisdiction.

## CONCLUSION

The City's motion for summary judgment is GRANTED.

The Clerk of Court is respectfully directed to close Dkt. No. 124.


SO ORDERED.


Dated: April 10, 2024
      New York, New York

                                   LEWIS J. LIMAN
                              United States District Judge